UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK SANDERS,<br><br>    Plaintiff,<br><br>v.<br><br>SYMPHONY COUNTRYSIDE LLC,<br>et al.,<br><br>    Defendants. | Case No. 19-cv-2308<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Sanders worked as a nurse for Defendant Symphony Countryside, LLC d/b/a Orchard Valley until it terminated him. Plaintiff now sues Orchard Valley and one its alleged corporate affiliates, Defendant Maestro Consulting LLC, for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. [78]. Maestro has moved to dismiss. [110]. For the reasons explained below, this Court grants Maestro's motion.

**I.    The Complaint's Allegations**

Plaintiff, an African American man, worked for Orchard Valley as a registered nurse from January 2015 until his termination in April 2018. [78] at ¶¶ 4, 20. Orchard Valley operates a health care facility in Aurora, Illinois, and, along with other "member entities," belongs to an organization called the "Symphony Care Network." *Id.* at ¶ 5. Plaintiff alleges, on information and belief, that Defendant Maestro and other third-party entities control the Symphony Care Network. *Id.* at ¶ 6. Plaintiff

1

also alleges that the Symphony Care Network is both a "family-run business" and "a complex web of legal entities under common ownership and control." *Id.* at ¶ 6 n.1. Plaintiff claims that the Symphony Care Network exerts considerable control over Orchard Valley and other member entities, in that all member entities apply the same workplace policies and the same employee handbook, and that "Symphony employees" serve as the point of contact for any administrative investigations into allegations of discrimination concerning member entities. *Id.* at ¶ 13.

Plaintiff claims that Orchard Valley discriminated against him because of his race and sex and retaliated against him for engaging in protected activity. *Id.* at ¶¶ 20–44. His second amended complaint asserts claims against both Defendants for: race and sex discrimination and retaliation in violation of Title VII (Counts I, II, and III); and race discrimination and retaliation in violation of 42 U.S.C § 1981 (Counts IV and V). [78] at ¶¶ 50–76. Maestro moves to dismiss all the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). [110].

## II. Legal Standard

Under Rule 12(b)(6), this Court must construe the complaint in the light most favorable to Plaintiff, accept as true all well-pleaded facts, and draw reasonable inferences in their favor. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Statements of law or conclusory factual allegations, however, need not be accepted as true. *Divane v. Nw. Univ.*, 953 F.3d 980, 987 (7th Cir. 2020). Rule 12(b)(6) limits this Court's consideration to allegations set forth in the complaint itself, documents attached to the complaint, documents central to the complaint and

referred to in it, and information properly subject to judicial notice. *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020).

To survive, the first amended complaint must "state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. While the sufficiency of the factual allegations depends upon the complexity of the case, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018).

### III. Analysis

In moving to dismiss, Maestro argues that: (1) Plaintiff failed to exhaust administrative remedies, barring his Title VII claim; and (2) Plaintiff fails to articulate a basis for liability against it under Section 1981. [110]. This Court considers the Title VII claims first, before turning to the remaining Section 1981 claims.

#### A. Title VII Claims

Before bringing a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing charges with the U.S. Equal Employment Opportunity Commission (EEOC) and receiving a right-to-sue letter. 42 U.S.C. § 2000e–5(e)(1); *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). This requirement serves two purposes: first, it allows the EEOC and the employer an opportunity to settle the matter; and second, it provides employer with notice of the conduct the

3

employee challenges. *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019). Ordinarily, a "party not named as the respondent in the charge may not ordinarily be sued in a private civil action under Title VII." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013); *see also Chaidez*, 937 F.3d at 1004. The Seventh Circuit, however, recognizes an exception to this general rule (the *Eggleston* exception) where an "unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Alam*, 709 F.3d at 666 (quoting *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981)).

The parties do not dispute that Plaintiff named only Orchard Valley as the respondent in his EEOC charge. [110] at 2–3; [116] at 8. Plaintiff nonetheless contends that the *Eggleston* exception excuses his compliance with exhaustion as to Maestro. Specifically, Plaintiff points to a letter he wrote to his EEOC investigator after filing his EEOC charge; the letter states: "It is my claim that the Symphony Network has a systemic culture of racism, gender bias, and retaliation." [116-2] at 2. Because Maestro controls the "Symphony Care Network," Plaintiff argues, this Court can infer that Maestro had sufficient notice of the charge by virtue of the letter. [116] at 8–9. Plaintiff's argument is unpersuasive.

Under Seventh Circuit jurisprudence, "the fact that one entity had notice of the charges against it is insufficient to satisfy the *Eggleston* exception as to a related entity that did not have notice of a charge against it or an opportunity to conciliate

4

that charge." *Alam*, 709 F.3d at 667 (affirming dismissal of defendant "Miller Brewing" where the plaintiff's EEOC charge named only "MillerCoors"); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008) (affirming dismissal of an unnamed defendant where the plaintiff merely notified defendant "that an EEOC charge had been filed against someone," but not "that a charge had been filed against *it*"). Thus, assuming Plaintiff's letter conferred notice to any entity at all, it only did so as to the "Symphony Network," not to Maestro itself.

Even if he could demonstrate notice, Plaintiff also fails to allege any facts suggesting that Maestro had the opportunity to conciliate on its own behalf. Absent these facts, Plaintiff cannot avail himself of the *Eggleston* exception, which requires the plaintiff to show that the defendant had both notice and the opportunity to conciliate. *Alam*, 709 F.3d at 666; *see also, e.g.*, *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 989 (N.D. Ill. 2010) (dismissing six defendants not named in the EEOC charge, reasoning that, although they had notice of the charge, the plaintiff nonetheless failed to allege that they had the opportunity to participate in conciliation proceedings).

In sum, Plaintiff fails to demonstrate that he exhausted his administrative remedies as to his Title VII claims against Maestro. This Court thus dismisses Plaintiff's Title VII claims in Counts I, II, and III based upon his failure to exhaust.

### B. Section 1981 Claims

Maestro next argues that Plaintiff fails to allege sufficient facts demonstrating liability under Section 1981. [110] at 3–5; [118] at 5–7. 42 U.S.C. § 1981 guarantees

5

all persons "the same right . . . to make and enforce contracts." 42 U.S.C. § 1981(a). Section 1981 therefore offers a basis for relief "when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing . . . contractual relationship." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006). Relevant here, a plaintiff proceeding under Section 1981 must allege either: (1) the existence of an employment relationship between himself and the defendant; or (2) that the defendant interfered with the plaintiff's relationship with his employer. *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 896 (7th Cir. 2015). Maestro argues that Plaintiff fails to plead either. [118] at 5–7.

As to the existence of an employment relationship between Plaintiff and Maestro, Plaintiff concedes that Maestro did not directly employ him; he maintains, however, that Maestro is liable under a "joint employer" theory. [116] at 6–8. To be sure, an entity "other than the actual employer may be considered a 'joint employer' for purposes of § 1981 if it exercised significant control over the employee." *McCurry v. Kenco Logistics Servs., LLC*, 942 F.3d 783, 790 (7th Cir. 2019). Plaintiff's complaint remains devoid, however, of any allegation suggesting that Maestro exercised control, much less maintained significant control, over Plaintiff. Indeed, Plaintiff does not allege that Maestro supervised him, offered him any payment or benefits, charged him with any job commitments or expectations, conducted his performance reviews, or disciplined him. The complaint thus falls far short of alleging the type of significant control sufficient to impose joint employer liability against Maestro. *See id.* (finding insufficient evidence of control where the defendant did not pay or provide

6

benefits to plaintiff, did not conduct her performance reviews, and did not issue the disciplinary warning she complained of).

Nor does Plaintiff sufficiently allege that Maestro interfered with Plaintiff's relationship with Orchard Valley. While a "third party can be liable under § 1981 for *interfering* with the plaintiff's relationship with his employer," *Deets v. Massman Const. Co.*, 811 F.3d 978, 984 (7th Cir. 2016) (quoting *Skylarsky*, 777 F.3d at 896), Plaintiff here alleges no facts whatsoever suggesting interference.

Perhaps recognizing these deficiencies, Plaintiff falls back on his argument that Maestro constitutes a joint employer by virtue of its corporate affiliation with Orchard Valley. [116] at 6–7. Plaintiff cites *Parker v. Scheck Mech. Corp.*, 772 F.3d 502 (7th Cir. 2014), where the court of appeals reversed the district court's entry of summary judgment on a Title VII case, finding the plaintiff's evidence sufficient to raise a question of fact on the issue of whether an affiliate of the plaintiff's employer could face liability. That case, however, concerns affiliate liability under a corporate veil-piercing theory: in the context of federal anti-discrimination statutes, a defendant might be liable if, "by ignoring corporate formalities, its actions cannot be separated from an affiliate that employed the plaintiff." *Id.* at 507.

To the extent Plaintiff relies upon *Parker* to demonstrate affiliate liability under Section 1981, his complaint again falls short. Illinois law[1] allows corporate veil-piercing only where: (1) there is such a unity of interest and ownership that the

---

[1] State law, not federal common law, governs veil-piercing. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 364 (7th Cir. 2016).

separate personalities of the corporation and the parties who compose it no longer exist; and (2) adherence to the fiction of a separate corporation would promote injustice or inequitable circumstances. *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751–52 (7th Cir. 2012). At most, Plaintiff's allegations demonstrate that Maestro and Orchard Valley maintain an ordinary corporate affiliation that exists through Maestro's purported "control" of the Symphony Care Network to which Orchard Valley belongs. Nothing more, however, raises an inference that the two entities demonstrate unity of interest and ownership (such as the two entities failing to observe corporate formalities, commingling funds, sharing officers and directors, or otherwise operating as essentially one entity). *See id.* at 752 (listing factors that Illinois courts consider); *see also, e.g.*, *Curry v. Revolution Labs., LLC*, No. 17 C 2283, 2020 WL 1330363, at *2 (N.D. Ill. Mar. 23, 2020) (finding corporate veil-piercing inappropriate where no allegations plausibly suggested that the two entities did not have separate personalities), *reconsideration denied*, No. 17 C 2283, 2020 WL 1548504 (N.D. Ill. Apr. 1, 2020); *Prewett Enterprises, Inc. v. Grand Trunk W. R.R. Co.*, No. 18-CV-04254, 2019 WL 6310495, at *4 (N.D. Ill. Nov. 25, 2019) (refusing to pierce the corporate veil where the complaint contained no allegations that affiliates failed to observe corporate formalities and maintain corporate records, commingled funds, or diverted assets); *Macrito v. Events Exposition Servs. Inc.*, No. 09 C 7371, 2011 WL 5101712, at *4 (N.D. Ill. Oct. 21, 2011) (refusing to pierce the corporate veil even where the two companies shared a president and payroll coordinator, operated and received phone calls from the same address, worked special events together, and

8

held themselves out as "sister" companies on the internet). Absent more, Plaintiff fails to plausibly pierce the corporate veil. And because Plaintiff fails to establish a basis for Section 1981 liability as to Maestro, this Court dismisses Counts IV and V against it.

### IV. Conclusion

This Court grants Maestro's motion to dismiss [110]. Counts I through V of the second amended complaint [78] are hereby dismissed as against Maestro. This Court sets a close of fact discovery deadline of 4/16/2021 for Plaintiff and the remaining Defendant, Orchard Valley. By 4/23/2021, the parties shall file a joint status report concerning their progress with discovery; they should also indicate whether they will need expert discovery and whether they plan to file dispositive motions. This Court will set case management dates in a future order. The Clerk is directed to terminate [89] and [95] as pending motions.

Dated: March 23, 2021

Entered:

_____
John Robert Blakey
United States District Judge

9